Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 2726 | DATE | 3/27/2000 |
| CASE TITLE | Patrick Russo vs. Nike, Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Motion to dismiss [5-1] is granted in part and denied in part.**

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

MAR 28 2000 date docketed

docketing deputy initials

Document Number: 10

date mailed notice

courtroom deputy's initials: TSA

Date/time received in central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK RUSSO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 99 C 2726 |
| ) | |
| NIKE, INC., and JANE ) | Hon. Wayne R. Andersen |
| DOE, an individual, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on the motion of defendants Nike, Inc. ("Nike") and Jane Doe to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, we grant in part and deny in part the motion to dismiss.

## BACKGROUND

Plaintiff Patrick Russo was hired by Nike as a sales associate at the NikeTown store in November, 1995. He was promoted to floor manager of the NikeTown store in February, 1997, where he remained until he resigned in April, 1998. As part of his employment with Nike, Russo was subject to performance reviews. He consistently received excellent performance reviews until January, 1998.

On January 8, 1998, during a meeting with Nike's Human Resource Manager, District Manager, and Manager, Russo was informed that he had been accused of sexually harassing an unnamed employee. The unnamed employee ("Jane Doe") stated that Russo allegedly asked her if she was losing weight and then told her, "well your bottom looks like it." Russo was also told at this

meeting that other employees had interpreted some of his comments as offensive. Russo denied making any of these statements or any statements that could have been considered offensive to any employees at Nike. Russo requested the identity of Jane Doe and his other accusers, but was denied the information. Following this meeting, Russo received a written performance reminder of these alleged violations of the Nike Sexual Harassment Policy.

Following the January 8, 1998 meeting, Russo noticed a change in his work environment. Russo claims that some of his subordinates at NikeTown were not as friendly toward him as they used to be, they were looking at him strangely, and they were, generally, more cold and distant than they had been toward him in the past. In addition, Russo was told by a co-manager at the store that some sales associates were aware of the sexual harassment claims against him and had been talking about it. Specifically, the co-manager told Russo that two sales associates had complained that they did not feel comfortable working around Russo. Shortly after this, another co-manager of Nike told Russo that other sales associates were angry with Russo for verbally disciplining them when they had not performed their jobs properly.

Russo approached the Nike Human Resource Manager to complain that sales associates were talking about the sexual harassment allegations made against him. Russo expressed to the Human Resource Manager that he believed the sales associates had made these false accusations in retaliation for being disciplined by Russo within the scope of their employment. In his complaint to the Human Resource Manager, Russo told her that he believed the sales associates were violating Nike's Sexual Harassment Policy by telling other employees and other third-party non employees that Russo had sexually harassed them. Russo alleges that the Human Resource Manager did

2

nothing in response to his complaints and extended no effort to stop the spreading of these defamatory rumors.

Russo again complained to the Human Resource Manager in February, 1998, that the sales associates were still discussing the sexual harassment allegations against Russo at work and that this made it difficult for him to do his job as a floor manager. Once again, Russo alleges that the Human Resource Manager did nothing to investigate his complaints or to stop the defamatory rumors.

On March 10, 1998, Russo wrote a letter to the Human Resource Manager, following up his prior verbal complaints. In his letter, he stated how he felt frustrated and harassed by Nike for its lack of response to his repeated complaints of the circulation of the sexual harassment allegations. Russo received no response to his letter, so he complained to the Director of NikeTown in March, 1998. Russo told the Director he believed that Nike had violated their Sexual Harassment Policy by refusing to properly investigate the accusations made against him and by not taking appropriate measures to ensure the accusations remained confidential. Russo explained to the Director his feelings of harassment, frustration, unfair treatment, and loss of good reputation by the inadequate treatment of the sexual harassment accusations. He told her that he was having difficulties performing his duties as floor manager under these circumstances. The only response Russo heard from the Director was that Nike would not void the January 8 written reprimand nor remove it from his file.

In late March, 1998, a co-manager told Russo that a sales associate had told him that Russo had forced certain female employees to do exercises so Russo could get enjoyment from watching them. Russo denied the allegation and immediately informed the Human Resource Manager of these false allegations and complained to her that they constituted sexual harassment of him under Nike's

3

policy. The Human Resource Manager responded by saying she will go talk to the sales associate about it. However, Russo is uncertain if the Human Resource Manager took any action in response to his complaint.

Russo alleges that all of these actions created a hostile and malicious work environment and, as a result of Nike's failure to respond, the work environment became intolerable. Therefore, he resigned on April 4, 1998. Soon after his resignation, Russo heard from both a sales associate at Nike and a non-employee of Nike that Russo was accused of sexual harassment and had resigned because of it.

Russo has filed a six-count complaint in this court. Count I alleges a cause of action for gender discrimination. Counts II and III allege causes of action for defamation. Breach of contract is alleged in Count IV. Counts V and VI allege reckless infliction of emotional distress.

## DISCUSSION

A motion to dismiss a complaint does not test whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In deciding a motion to dismiss, the court must assume all facts alleged in the complaint to be true, construe the allegations liberally, and view the allegations in the light most favorable to the plaintiff. Wilson v. Formigoni, 42 F.3d 1060, 1062 (7th Cir. 1994). Dismissal is only properly granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Cushing v. City of Chicago, 3 F.3d 1156, 1159 (7th Cir. 1993).

I.  Count I–Gender Discrimination

Russo's complaint was timely filed within 90 days of receiving his Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC"). Nike contends that we should

4

dismiss Count I of the complaint because Russo failed to attach a copy of the EEOC charge or Right to Sue letter to the complaint. However, the complaint clearly states that Russo filed a charge with the EEOC against Nike on December 11, 1998, and received his Notice of Right to Sue on January 26, 1999, entitling him to file a civil action within 90 days of that receipt. Russo filed his complaint on April 26, 1999, within the 90-day time period in accordance with 42 U.S.C. §2000e-5(f)(1). A copy of Russo's EEOC charge and Right to Sue letter are attached to his response to the motion to dismiss. Therefore, Nike's argument is without merit.

Nike also argues that Count I should be dismissed because the conduct alleged does not constitute gender discrimination under 42 U.S.C. §2000e. However, Russo has alleged facts sufficient to state a claim of sexual harassment against Nike. In defining a hostile work environment, the Supreme Court has found that Title VII is violated when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., 510 U.S. 17 (1993). To establish a prima facie case for hostile work environment sexual harassment, the plaintiff must show that (1) he was a member of a protected class; (2) he was subjected to unwelcome verbal or physical conduct of a sexual nature; (3) the harassment was based on gender; (4) the harassment was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment; and (5) the employer knew or should have known of the harassment and unreasonably failed to take the appropriate corrective action. Pasqua v. Metropolitan Life Ins. Co., 1995 U.S. Dist. LEXIS 17108, *8 (N.D. Ill. 1995).

In his complaint, Russo has met the prima facie requirements. It is obvious that he is a member of a protected class as a male. He alleged that he was subjected to unwelcome verbal

5

conduct of a sexual nature from sales associates at NikeTown by their false allegations of sexual harassment against him. Russo alleges that the discrimination was based on his gender because the complaint of a female employee was taken more seriously than his previous complaints. Russo also alleges that the harassment was severe and pervasive enough to alter the conditions of his employment, leading him ultimately to resign. He alleges that the rumors of inappropriate sexual remarks to subordinates and false accusations significantly affected his ability to perform his job as floor manager. Finally, Russo alleges in his complaint that he told his employer on several occasions of the harassment and that Nike unreasonably failed to take any appropriate corrective action.

It is important to keep in mind that Rule 12(b)(6) does not test Russo's ultimate proof of the critical facts. Russo has alleged sufficient facts in his complaint to state a claim for gender harassment against Nike. Therefore Nike's motion to dismiss Count I is denied.

II.     Counts II and III--Defamation

Illinois requires that defamation actions be commenced within one year after the cause of action accrued. 735 ILCS 5/13-201. Russo filed this complaint on April 26, 1999. Nike argues that the alleged defamatory statements were made between January and late March, 1998 and, therefore, the cause of action for defamation expired in March, 1999. However, Russo alleges that he was still subjected to the rumors in April, 1998. Therefore, we find that Russo has sufficiently pled a cause of action for defamation which is not barred by the statute of limitations.

Nike also argues that Russo failed to state a cause of action for defamation. To establish a cause of action for defamation in Illinois, the plaintiff must allege that (1) there was a false statement concerning the claimant; (2) there was an unprivileged publication of the defamatory statement to a third party by the defendant; and (3) he was damaged. Gibson v. Philip Morris, Inc., 292 Ill.

6

App.3d 267, 685 N.E.2d 638, 643 (1st Dist. 1995); <u>Chisolm v. Foothill Corp.</u>, 940 F. Supp. 1273, 1284 (N.D. Ill. 1996). An employee can state an actionable claim of defamation if he alleges the basic substance of the alleged defamatory statement, and the defaming language need not be quoted verbatim. <u>Chisolm</u>, 940 F.Supp. at 1285. Nike contends that the complaint fails to allege that a false statement concerning the plaintiff was published by Nike to a third party.

In his complaint, Russo sufficiently sets out the defamatory language made by Nike employees and the persons to whom the statements were allegedly published. Russo alleges that he was told by a co-manager, other sales associates, and a friend who was never an employee or Nike, that Nike's Human Resources Manager, District Manager, Manager, and certain sales associates were aware of and discussing the sexual harassment accusations and telling other employees and third-party, non-employees that Russo had sexually harassed them. The statements published allegedly contain criticisms of the plaintiff's past job performance and his inability to perform his job in the future. These allegations are sufficient to establish a defamation claim and put Nike on sufficient notice to respond the pleadings. Further, Russo should have an opportunity to discover the exact details of the Nike's conduct through the discovery process. See <u>Chisolm</u>, 940 F.Supp. at 1285. Therefore, Nike's motion to dismiss Count II for defamation is denied.

III.  <u>Count IV--Breach of Implied Contract</u>

In Count IV, Russo alleges that Nike's written sexual harassment policy creates a binding agreement which Nike breached. Specifically, Russo alleges that Nike's policy requires a discussion with the alleged harasser and confidentiality as well as certain responses by managers or supervisors to allegations of harassment. Russo claims that the policy "constituted a clear promise to employees" and that Nike breached the policy be failing to properly follow its terms.

7

Many courts have held that an employer's sexual harassment policy does not create a binding agreement between an employer and employee. See, e.g., Finnane v. Pentel of America, Ltd., 43 F. Supp.2d 891(N.D. Ill. 1999). In Corluka v. Bridgeford Foods of Illinois, Inc., 284 Ill.App.3d 190 (1st Dist. 1996), the court held that in order for an employee handbook or policy statement to create an enforceable contractual right there must be three elements present: 1) the language of the policy must contain a promise clear enough that an employee would reasonably believe that an offer was made; 2) the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably relieves it to be an offer; and 3) the employee must accept the offer by commencing work after learning of the policy statement.

In this case, Russo cannot satisfy the first element. The employee handbook in this case contained an Acknowledgment Form which was signed by Russo. The Acknowledgment Form contains a disclaimer which states that the employee's employment is "at will" because it is not the policy of Nike to enter into employment contracts, express or implied, and that the employee handbook does not form the basis for a contract. Therefore, a reasonable person could not believe that Nike's handbook or sexual harassment policy constituted a contractual offer in light of the Acknowledgment Form.

Illinois courts have recognized that such disclaimers can be sufficient to defeat the clear promise requirement. See Border v. City of Crystal Lake, 75 F.3d 270, 273 (7th Cir. 1996) (construing Illinois law). The language of the Nike disclaimer is synonymous with the disclaimer language considered by the court in Finnane v. Pentel of America, Ltd., 43 F. Supp. 2d 891 (N.D. Ill. 1999). The Court in Finnane held that the disclaimer was sufficiently conspicuous because it was placed on the acknowledgment page above the signature line, just as was Nike's disclaimer. A

reasonable person in Russo's position ought to have noticed the disclaimer and could not expect that the employee handbook or sexual harassment policy was a contractual offer of any kind. Therefore, Russo's claims of breach of implied contract warrant dismissal.

IV. <u>Counts V and VI--Reckless Infliction of Emotional Distress</u>

In order to state an actionable claim for reckless infliction of emotional distress, Russo must allege that (1) Nike's conduct was extreme and outrageous; (2) Nike knew there was a high probability that its conduct would cause severe emotional distress; (3) Nike's conduct did in fact cause Russo severe emotional distress; and (4) Nike's conduct was the actual and proximate cause of the emotional distress. <u>Sallis v. Warner Elektra Atlantic Corp.</u>, 1999 U.S. Dist. LEXIS 4380 (N.D.Ill. 1999). Courts have consistently held that the conduct alleged must be "particularly egregious." <u>Hamros v. Bethany Homes</u>, 894 F. Supp. 1176, 1180 (N.D. Ill. 1995).

Moreover, the extreme and outrageous nature of a defendant-employer's conduct may arise out of its abuse of the employer-employee relationship which inherently bestows upon the employer the power to damage an employee's interests in continued employment and in his or her reputation. <u>Parker v. Bank of Marion</u>, 296 Ill. App. 3d 1035, 1039 (5th Dist. 1998). Other courts have also found that the abuse of power may give rise to extreme and outrageous conduct not so much from what is done, as from the defendant's actual ability to damage the plaintiff by its exercise, or failure to exercise, its power. <u>Doe v. Calumet City</u>, 161 Ill.2d 374, 392-95 (Ill. 1976).

Russo alleges that Nike's conduct of spreading false rumors of sexual harassment and its refusal to investigate was extreme and outrageous behavior which resulted in an intolerable work environment. He also alleges that "Nike knew there was a high probability that such conduct on the part of Nike's employees would cause Russo severe emotional distress." Russo further alleges that

Nike's conduct did in fact cause emotional distress and that Nike's conduct was the proximate cause of the emotional distress.

Therefore, Russo has sufficiently alleged a claim for reckless infliction of emotional distress. The motion to dismiss Counts V and VI is denied.

## CONCLUSION

For the foregoing reasons, we deny defendants' motion to dismiss plaintiff's complaint as to Counts I, II, III, V and VI. We grant the motion to dismiss as to Count IV. Therefore, the Count IV claims of breach of implied contract are dismissed.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: March 27, 2000